UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KENNETH RAY POWELL                                    PLAINTIFF

V.                          CIVIL ACTION NO. 3:23-CV-2985-TSL-MTP

WORLDWIDE TRUCKS, LLC                                  DEFENDANT


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Worldwide Trucks, LLC (Worldwide) for summary judgment on plaintiff Kenneth Ray Powell's complaint alleging breach of the implied warranty of merchantability arising from the purchase of a used dump truck.  Plaintiff has responded in opposition to the motion, and the court, having considered the parties' memoranda of authorities and exhibits, concludes that the motion should be granted in part and denied in part.

Facts and Procedural History

The following are the undisputed facts established by the evidence, viewed in the light most favorable to plaintiff.

Plaintiff Kenneth Powell is the sole member of KRP Construction, LLC (KRP), a Mississippi limited liability company[1] that engages in sand and gravel mining.  In April 2022, plaintiff negotiated the $30,000 purchase by KRP of a 2007 Mack

---

[1]    The Mississippi Secretary of State's website reflects that KRP was organized in 2020.

1

dump truck from Worldwide, a Texas company.  Immediately upon delivery of the truck to plaintiff's residence in Crystal Springs, Mississippi on May 4, plaintiff discovered that the truck would not go over 35 miles per hour.  He did not immediately report the issue to Worldwide, however.  Instead, he first attempted some basic repairs to the truck – changing the filters – and when that didn't fix the problem, he asked a mechanic friend, Victor Willis, to see if he could find and possibly repair the problem.

Willis tried, but because he lacked the necessary equipment, he was unable to diagnose the problem and after a couple of days, he suggested that plaintiff take the truck to a repair shop that works on Mack trucks, Tri-State Truck Center. Plaintiff agreed, and on May 26, 2022, Willis drove the truck approximately thirty miles from Crystal Springs to Tri-State, using the frontage road rather than the interstate since the truck still would not go over 35 miles per hour.

Around June 9, Tri-State reported to plaintiff that it suspected the truck had been struck by lightning, damaging the electrical system.  It estimated the cost to repair, which primarily involved replacing the wiring harness, at $13,000 to $14,000.[2]  At that point, plaintiff notified Worldwide, for the

---

[2]    Based on Tri-State's purported diagnosis, Worldwide insinuates that the truck's electrical system was damaged during

first time since delivery of the truck, of the problem with the truck.[3]  In response, Worldwide offered to send plaintiff a used wiring harness that had recently been removed from another truck.  After consulting with Tri-State, which said it would not warrant the work if a used harness were installed, plaintiff rejected this option and requested that Worldwide provide a new wiring harness.  Worldwide refused.  Plaintiff made a second request for a new wiring harness after the insurer denied the claim for damage from a lightning strike, see supra note 2, but Worldwide again refused.

Lacking funds to pay for the repairs, plaintiff left the truck with Tri-State in an unrepaired state until late October, when he finally had enough money to pay Tri-State's $13,029.17 repair bill.  In the meantime, on October 11, 2022, he filed

---

a May 2024 storm, i.e., after delivery of the truck to plaintiff.  According to plaintiff, however, he filed a claim on the truck with his insurer, which denied the claim because it found no proof the truck was struck by lightning during the Crystal Springs storm.  He suggests, apparently, that the insurer's denial tends to refute Worldwide's suggestion that the truck's electrical system was damaged while in his possession. While not material to the court's disposition of the motion, the court does note that plaintiff has identified no record proof to support this assertion and the court has found none.

[3]    The parties have provided no evidence to show when Tri-State communicated its diagnosis to plaintiff, or when plaintiff in turn communicated it to Worldwide, but the Tri-State invoice reflects the diagnosis was made June 9, and in its brief, Worldwide says plaintiff did not notify it of problems with the truck for "more than a month."  It is reasonable to infer that this all occurred on or around June 9.

this lawsuit in state court, demanding damages "not to exceed $70,000" on claims for breach of express warranty, breach of implied warranties of merchantability and fitness for a particular purpose and intentional infliction of emotional distress.

On October 30, the first day plaintiff used the truck after getting it back from Tri-State, he discovered the truck had mechanical issues, including engine misfires and smoking; these problems were not discovered sooner due to the faulty or damaged wiring harness. Plaintiff contacted Willis to see if he could determine what was wrong with the truck. It took Willis several weeks to diagnose the problem, but ultimately, he concluded the truck had three faulty injectors and a damaged camshaft.

In response to this information, plaintiff's son contacted Worldwide, demanding $60,000 plus a replacement truck. On December 5, Worldwide responded by text to plaintiff, asking him to explain the basis for this demand, given that Tri-State's bill for the work on the truck was only around $13,000. That is when plaintiff informed Worldwide that, in addition to the electrical problems originally reported and repaired by Tri-State, "the motor is now bad three injectors is now bad"; and he claimed that due to the problems with the truck, he was losing money on hauling jobs. In reply, Worldwide agreed it would pay the $13,000 invoiced by Tri-State "so that we can move on," but

it said it "[couldn't] do anything about something we're just hearing about 6 months later."

Following this text exchange, plaintiff decided that he and Willis would do the repair work on the truck rather than taking it back to Tri-State, because of the cost involved. And, instead of replacing just the camshaft, he decided to replace the engine, since he could get a used engine for around $7,000 whereas the camshaft alone was $7,500.[4]

It is not clear when the work commenced or when it was completed, though the court's impression is that it was done sporadically over a period of weeks. At times, plaintiff's sons assisted Willis, and at other times, plaintiff himself assisted; and plaintiff alleges that while he was assisting Willis by getting under the truck and helping to guide the engine as it was lowered into place, he injured his back, requiring medical treatment and consequent expenses. The repair was successful, and the truck has since remained in working condition.[5]

Worldwide removed the case to this court in October 2023 based on diversity jurisdiction after plaintiff served discovery responses stating that in addition to other damages, he was

---

[4]    These are the figures plaintiff testified to in his deposition. Willis testified the engine cost was lower, $5,500. The court accepts plaintiff's figure for present purposes.
[5]    Per plaintiff's deposition, one of his sons now uses the truck for "private job hauling loads," up to four or five times a week.

seeking "$150,000 in lost profits."  Then, in January 2024, after the magistrate judge granted his unopposed motion to amend, plaintiff filed an amended complaint, adding allegations relating to the bad injectors and camshaft and consequent replacement of the engine; eliminating all but the breach of implied warranty of merchantability claim; and seeking additional damages, including the costs incurred in replacing the engine, lost profits, and damages for his back injury.

Worldwide's Motion

Worldwide argues that it is entitled to summary judgment on one or more of the following four bases:  (1) KRP, not Powell individually, is the real party in interest to pursue the breach of implied warranty claim; (2) even if Powell is a or the real party in interest, he failed to give Worldwide opportunity and notice to cure the alleged defects, as required to sustain his claim; (3) Powell cannot demonstrate necessary elements of his damages claim; and (4) at a minimum, summary judgment must be granted as to plaintiff's claim for lost profits, as he cannot provide sufficient proof of such a loss.

Summary Judgment Standard

A motion for summary judgment under Rule 56 requires the court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence presented. Fed. R. Civ. P. 56(c).  Summary judgment is proper "if the

6

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kee v. City of Rowlett, 247 F.3d 206, 210 (5th Cir. 2001). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000). In evaluating a summary judgment motion, the court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. Id.

### Real Party in Interest

Federal Rule of Civil Procedure 17(a) states, "An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." Farrell Constr. Co. v. Jefferson Parish, La., 896 F.2d 136, 140 (5th Cir. 1990). The purpose of the rule is to protect a defendant from multiple suits and multiple damage awards arising from the same claim. Aetna Cas. & Sur. Co. v. Pendleton Detectives of Miss., Inc., 969 F. Supp. 415, 418 (S.D. Miss. 1997).

The inquiry under Rule 17(a) asks, "who, by the [governing] substantive law, has the right to be enforced...." Id. (citing Lubbock Feed Lots, Inc. v. Iowa Beef Processors, 630 F.2d 250, 256-57 (5th Cir. 1980)). Under applicable Mississippi law, persons who may sue as the real party in interest on a breach of implied warranty claim are the buyer and "any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." See Miss. Code Ann. 75-2-318 (designating third party beneficiaries of express and implied warranties); § 75-2-714 (setting out buyer's damages with regard to accepted goods).

Plaintiff testified by his deposition that he purchased the dump truck, but he did not state the capacity in which he was acting in effecting the purchase, i.e., as an individual or as the agent for KRP. Thus, his testimony does not tend to prove that he, as an individual, was the buyer. Like a corporation, an LLC is an artificial entity that can act only through natural persons; "every member of an LLC is an agent for the purpose of conducting its business and affairs." Watkins & Eager, PLLC v. Lawrence, 326 So. 3d 988, 993 (Miss. 2021) (citing Bluewater Logistics, LLC v. Williford, 55 So. 3d 148, 151, 162 (Miss. 2011)). In fact, the evidence shows that the funds for the

8

transaction were supplied by a commercial bank loan *to KRP* and further, that plaintiff specifically instructed Worldwide to title the vehicle *in KRP's name*.  In the court's opinion, plaintiff has failed to create a genuine issue of material fact as to the identity of the buyer:  the buyer, as the undisputed evidence shows, was KRP, not plaintiff individually.

> In Mississippi,
>
> A member, manager or officer of a limited liability company is not a proper party to a proceeding by or against a limited liability company, by reason of being a member, manager or officer, as applicable, of the limited liability company, except:
>> (a) Where the object of the proceeding is to enforce a member's, manager's or officer's right against or liability to the limited liability company; or
>> (b) In a derivative action brought pursuant to Article 11 of this chapter.

Miss. Code Ann. § 79-29-311(2).  As this is neither an action to enforce plaintiff's rights against KRP nor a derivative action, plaintiff is not a real party in interest to pursue the claim in this case.[6]

---

[6]    Plaintiff argues that even if he were not the buyer, the fact that he sustained a personal injury while repairing the truck makes him a real party in interest to pursue a breach of implied warranty claim.  Regardless of whether he may have had standing to pursue a claim of some other nature against Worldwide on account of his alleged injury -- which is doubtful -- he does not have standing on this basis to sue for breach of warranty.

Plaintiff also argues that he should be allowed to pursue the claim individually based on Mississippi's <u>Derouen</u> doctrine, under which, in the case of a closely held corporation, the trial court has discretion to treat an action raising a

Worldwide argues that because plaintiff is not the real party in interest, it follows that his complaint must be dismissed with prejudice.  See <u>Fill It Up, LLC v. MS LZ Delta, LLC</u>, 342 F. Supp. 3d 707, 720 (N.D. Miss. 2018) (granting Rule 12(b)(6) motion dismissing LLC's claim brought by LLC member).  Under Federal Rule of Civil Procedure 17(a)(3), however, dismissal is not required.

Rule 17(a)(3) states that the court may not "dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been

---

derivative claim as a direct action, exempt it from restrictions and defenses that apply to derivative actions, and order an individual recovery, if the court finds that to do so will not "(i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of the creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested parties." <u>Derouen v. Murray</u>, 604 So. 2d 1086, 1091 n.2 (Miss. 1992).  The Mississippi Supreme Court has never applied the <u>Derouen</u> exception outside the context of intracorporate disputes and the court is not persuaded it would do so here.  See <u>Mathis v. ERA Franchise Sys., Inc.</u>, 25 So. 3d 298, 302 (Miss. 2009) ("A review of cases from other jurisdictions reveals that the doctrine is almost always employed in purely intracorporate disputes.") (collecting cases); <u>see also</u> <u>Photo Arts Imaging Pros., LLC v. Best Buy Co.</u>, No. 2:10-CV-284-KS-MTP, 2011 WL 5860704, at *3 (S.D. Miss. Nov. 22, 2011) (finding it "very unlikely that the Mississippi Supreme Court would apply <u>Derouen</u>" to a non-intracorporate dispute); <u>Fill It Up, LLC v. MS LZ Delta, LLC</u>, 342 F. Supp. 3d 707, 718 (N.D. Miss. 2018) (declining to apply exception to non-intracorporate dispute).

allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). "This provision requires the defendant to object in time to allow the opportunity for joinder of the ostensible real party in interest, and the defense may be waived if the defendant does not timely object." In re Signal Int'l, LLC, 579 F.3d 478, 488–89 (5th Cir. 2009).

Plaintiff asserts that Worldwide has waived this defense by litigating the case with him for over two years without raising this objection. See Domain Prot., LLC v. Sea Wasp, LLC, No. 4:18-CV-792, 2019 WL 5189200, at *4-5 (E.D. Tex. Oct. 15, 2019) ("Any defense claiming that a party is not the real party in interest is waived when it is not timely asserted"). A defendant' real-party-in-interst objection is timely "so long as joinder of the real party in interest remains 'practical and convenient.'" In re Signal Int'l, LLC, 579 F.3d 478, 487–88 (5th Cir. 2009) (quoting Rogers v. Samedan Oil Corp., 308 F.3d 477, 484 (5th Cir. 2002)). The relevant factors for determining whether the defense was timely raised are "when the defendant knew or should have known about the facts giving rise to the plaintiff's disputed status as a real party in interest; whether the objection was raised in time to allow the plaintiff a meaningful opportunity to prove its status; whether it was raised in time to allow the real party in interest a reasonable

opportunity to join the action if the objection proved successful; and other case-specific considerations of judicial efficiency or fairness to the parties." Id.

In this case, there is no question but that Worldwide unreasonably delayed raising its real-party-in-interest defense. It knew at the outset that the buyer was KRP, not plaintiff; and it knew from the time the original case was filed, or at least from the time plaintiff filed the amended complaint eliminating all but the breach of implied warranty claim, that plaintiff was not the real party in interest to pursue such claim. Yet despite this, it failed to raise the issue in a meaningful way until its summary judgment motion, filed some two years after the lawsuit was commenced and eleven months after plaintiff filed the amended complaint.[7] See id. (stating that "disputes regarding the real party in interest 'are likely to be evident to a defendant at the onset of suit, because [he] almost always knows whether he has been sued by the party who "owns" the claim.'") (quoting Gogolin & Stelter, 886 F.2d 100, 102 (5th Cir. 1989)). That said, there is adequate time to allow KRP to be

---

[7]    Including a cryptic "lack of standing" defense among dozens of "boilerplate" defenses in the answer was not sufficient to apprize plaintiff of Worldwide's defense that he was not the real party in interest. See Woodfield v. Bowman, 193 F.3d 354, 361 (5th Cir. 1999) (finding such "boilerplate" defensive pleading insufficient under Federal Rule of Civil Procedure 8(c) to apprize plaintiff of specific affirmative defense).

substituted in place of plaintiff or, alternatively, for KRP to ratify plaintiff's continued prosecution of the action. Either can be accomplished without the need to conduct additional discovery or continue existing deadlines and without prejudice to Worldwide, given the clear identity of interest between plaintiff and KRP.

Notice and an Opportunity to Cure

Under Mississippi law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Miss. Code Ann. § 75-2-314(1). The warranty is equally applicable to used and new goods, see Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith, 523 So. 2d 324, 327 (Miss. 1988), and cannot be waived or disclaimed. See Murray v. Blackwell, 966 So. 2d 901, 904 (Miss. Ct. App. 2007) ("As a general rule, these implied warranties may not be waived or disclaimed.").

To succeed on a claim for breach of the implied warranty of merchantability, a plaintiff must plead and prove the following elements:

> (1) That a "merchant" sold "goods," and he was a merchant with respect to "goods of the kind" involved in the transaction, (2) which were not merchantable at the time of the sale, and (3) injuries and damages to the plaintiff or his property, (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of the injury.

Seahorn Invs., L.L.C. v. Goodman Mfg. Co., L.P., 667 Fed. Appx. 452, 454-55 (5th Cir. 2016) (quoting Watson Quality Ford, Inc. v. Casanova, 999 So. 2d 830, 834 (Miss. 1988)). "In particular, a plaintiff must provide notice to the seller because, although 'there may have been a breach of warranty of merchantability, the seller has a right to attempt cure.'" Id. (quoting Fitzner Pontiac-Buick-Cadillac, 523 So. 2d at 328. See Watson Qualify Ford, 999 So. 2d at 834 (stating that "the seller's right to attempt cure of an alleged defect is a 'reasonable requisite' of a buyer's 'right of recovery.'").

Worldwide contends it is entitled to summary judgment based on KRP's failure to provide it with notice or an opportunity to cure. In support, it argues that KRP failed to timely notify Worldwide that the truck, when delivered, could go no more than 35 miles per hour. More specifically, it argues he gave no notice of any problem for over a month and not until after "a large thunderstorm" and after Tri-State concluded that the truck had likely been struck by lightning. Further, it maintains that plaintiff unreasonably rejected its offer to cure by providing a used wiring harness. And it argues that KRP's delay of more than six months in providing notice of the additional mechanical problems was unreasonable and untimely.

In the court's opinion, summary judgment is not proper on this basis as there are obviously genuine issues of fact as to

the reasonableness of notice and Worldwide's response to such notice.  See Carter Equip. Co. v. John Deere Indus. Equip. Co., 681 F.2d 386, 396 (5th Cir. 1982) ("[W]hether the notice requirement has been complied with is a question which is particularly within the province of the jury." (quoting E. Air Lines, Inc. v. McDonnell Douglas Corp., 532 F.2d 957, 973 (5th Cir. 1976)); Mercury Marine v. Clear River Constr. Co., 839 So. 2d 508, 522 (Miss. 2003) ("The period of time which constitutes a 'reasonable' opportunity [to cure defects] ... is nowhere defined as a matter of law, because it is an issue of fact."); Royal Lincoln-Mercury Sales, Inc. v. Wallace, 415 So. 2d 1024, 1028 (Miss. 1982) (whether a buyer has given the seller a reasonable opportunity to cure is question of fact for the jury).

Damages

Damages in this case, which involves goods for which there was an acceptance but no revocation by the buyer, are covered by Miss. Code Ann. § 75-2-714.  See Gast v. Rogers-Dingus Chevrolet, 585 So. 2d 725, 730 (Miss. 1991) ("If the buyer accepts goods and fails to make an effective revocation of acceptance, his remedy is under § 75-2-714").  The statute provides:

> (1) Where the buyer has accepted goods and given notification (subsection (3) of Section 2-607) [Section 75-2-607] he may recover as damages for any

nonconformity of tender the loss resulting in the
ordinary course of events from the seller's breach as
determined in any manner which is reasonable.

(2) The measure of damages for breach of warranty is
the difference at the time and place of acceptance
between the value of the goods accepted and the value
they would have had if they had been as warranted,
unless special circumstances show proximate damages of
a different amount.

(3) In a proper case any incidental and consequential
damages under Section 75-2-715 may also be recovered.

Miss. Code Ann. § 75-2-214.

Worldwide submits that plaintiff cannot establish any
damages because there is no evidence of the difference of the
value of the truck as warranted and the value of the truck as
delivered, and because there is no proof of "special
circumstances" as would allow for the recovery of incidental
and/or consequential damages under § 75-2-715.

Applying § 75-2-714(2), the Mississippi Supreme Court has
held that "if the [product] could have been repaired so as to
properly function, the measure of damages under § 75-2-714 [is]
the cost of repairs," not to exceed the purchase price, and "if
the [product] could not be repaired and was worthless, the
[buyer] under § 75-2-714 would [be] entitled to a refund of the
purchase price." Fedders Corp. v. Boatright, 493 So. 2d 301,
309 (Miss. 1986). See also 1 White, Summers & Hillman, Uniform
Commercial Code § 11:3 (6th ed. 2018) ("A common objective
measurement of the difference in value as is and as warranted is

16

the cost of repair."); 1 UCC Transaction Guide § 10:8 (Supp. 2024) ("In many cases the cost of repairing the goods will establish the difference in value between the goods as warranted and as accepted.").

Here, the evidence shows that the truck could be and was, in fact, repaired, and is properly functioning; and plaintiff has submitted evidence as to the cost/value of the repair work. Specifically, plaintiff has presented Tri-State's $13,029.17 invoice for the replacement of the wiring harness and in addition, Powell and Willis have testified to the cost of the replacement camshaft/engine and the cost and/or value of the labor for this work, namely, $4,000 paid to Willis and an allegedly $8,000 worth of labor supplied by Powell himself. This evidence is sufficient to create a jury issue as to the value of the truck as warranted and as delivered.

Worldwide's further contention that the absence of proof of "special circumstances" forecloses any claim for the recovery of incidental or consequential damages is unfounded. Section 75-2-714(2) does not impose an additional burden on plaintiff to show "special circumstances" to recover such damages. Rather, "special circumstances" in § 75-2-714(2) refers to situations where application of the general rule would not fully compensate the buyer for loss of value of the good itself. Quality Bus. Forms of Minneapolis, Inc. v. Secured Choice, Inc., No. C1-02-

17

1764, 2003 WL 21525249, at *4 (Minn. Ct. App. July 1, 2003)
(explaining that "special circumstances" must be proven only
when the plaintiff is seeking to recover general damages
measured on some basis other than a difference in value of goods
as warranted and as received).  Under the statute, incidental
and/or consequential damages are available in a "proper case,"
which is any case in which the plaintiff can meet the
requirements of § 75-2-715, which delineates incidental and
consequential damages recoverable for a breach of the warranty
of merchantability.  See Steen v. Mercedes-Benz USA, LLC, No.
1:17-CV-158-LG-RHW, 2017 WL 3207237, at *2 (S.D. Miss. July 28,
2017) (in addition to damages under § 75-2-714(2), "[a] buyer
can also recover consequential or incidental damages for breach
of warranty under Mississippi law.").

        Consequential/Incidental Damages

        Section 75-2-715 defines incidental damages recoverable due
to a seller's breach to include, inter alia, "any ... reasonable
expense incident to the delay or other breach," Miss. Code Ann.
§ 75-2-715(1).  Consequential damages include, inter alia,
"[i]njury to person or property proximately resulting from any
breach of warranty."  Id. § 75-2-715(2)(b).  Plaintiff has
demanded recovery of a year's worth of lost profits for time he
alleges he was unable to use the truck in his hauling business,
and further, he seeks medical expenses related to the back

injury he sustained while assisting Willis in repairing the
truck.  Worldwide is entitled to summary judgment on the claim
for these damages.

Lost Profits and the Motion to Exclude:

Plaintiff testified that he lost $3,000 per week because of
Worldwide's alleged breach of warranty.  In support of his claim
for lost profits, plaintiff initially offered the April 22, 2024
report of his expert economist, Bill Brister, opining that the
amount of net lost profits due to the breach was $109,800
($150,000 less operating expenses).  On November 9, after the
discovery deadline, he produced a supplemental report in which
Brister dramatically reduced the estimate for lost profits to
$23,144.

By order entered November 13, the magistrate judge granted
a defense motion to strike the supplemental report as untimely.
Notably, in response to the motion to strike, plaintiff stated
he was no longer relying on Brister's original $109,800
estimate; and Worldwide has now moved to exclude Brister's
original report.  The motion to exclude will be granted, both
because plaintiff has represented that he does not rely on that
report and because the original report, particularly as
evidenced by the supplemental report reducing the estimate of
lost profits by more than 75%, is obviously unreliable.

In its summary judgment motion – which was filed before both the motion to exclude Brister's original report and the magistrate judge's order granting the motion to strike his supplemental report – Worldwide argued summary judgment should at least be granted as to plaintiff's claim for lost profits because he has no evidence of any lost profits, he lacks sufficient evidence to prove any lost profits could not have been reasonably prevented, and he lacks sufficient evidence and data to prove his allegedly lost profits are anything more than speculation.  In his response to the motion, plaintiff made no effort to address any of these arguments.  At most, he mentioned once that he was "unable to use the truck for a year," but he failed entirely to point to any competent proof of actual lost profits.[8]  Therefore, summary judgment will be granted on the claim for lost profits.

Medical Expenses:  Plaintiff has argued in his response that he has a viable claim for medical expenses due to his back injury.  However, Powell, individually, and not KRP, suffered the back injury and incurred the resulting medical expenses.

---

[8]    The court is aware from its review of Powell's deposition that he claimed to Worldwide that he had lost an average of $3,000 per week because he was unable to use the truck for hauling jobs.  But plaintiff, through has production of Brister's supplemental report and his own representation that he was no longer asserting a $100,000+ loss, has disavowed that testimony.  And there is otherwise no evidence of any lost profits.

These are not damages sustained by KRP, the real party in interest, and therefore, are not recoverable in this cause.

Conclusion

Based on the foregoing, it is ordered that Worldwide's motion for summary judgment is granted in part and denied in part. It is further ordered that Worldwide's motion to exclude the original expert report of Bill Brister is granted. Finally, it is ordered that on or before January 31, 2025, plaintiff shall either move to substitute KRP as plaintiff or file a notice indicating KRP's ratification of plaintiff's continued prosecution of this case on its behalf, failing which the action will be dismissed.

SO ORDERED this 17th day of January, 2025.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE